**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| GEORGE LON WILLIAMS, et al., )<br><br>Plaintiffs, )<br><br>v. )<br><br>THE ISLAMIC REPUBLIC OF IRAN, et al., )<br><br>Defendants. )<br>_____) | Civil Action No. 1:18-cv-02425-RDM |

**PLAINTIFFS' MOTION AND**
**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ORDER**
**FINDING EFFECTIVE SERVICE OF PROCESS ON DEFENDANTS**
**<u>PURSUANT TO 28 U.S.C. § 1608</u>**

# TABLE OF CONTENTS

A. INTRODUCTION AND BACKGROUND ................................................................ 1

B. SERVICE OF PROCESS PURSUANT TO THE FSIA ........................................ 2

   1. Serving a Foreign State and its Political Subdivisions under §1608(a). ........................ 3

   2. Serving Agencies and Instrumentalities of a Foreign State under §1608(b). .................... 4

C. DEFENDANTS' STATUS AS SOVEREIGN ENTITIES UNDER FSIA .......................... 6

   1. Iran, Islamic Revolutionary Guard Corps, and Iranian Ministry of Intelligence and Security. ...................................................................... 6

   2. Bank Melli Iran, Bank Markazi, and National Iranian Oil Company. .......................... 7

      a. Bank Melli is an Agent or Instrumentality of Iran. .................................. 9

      b. Bank Markazi is an Agency or Instrumentality of Iran. ............................ 10

      c. National Iranian Oil Company is an Agent or Instrumentality of Iran. ................. 21

D. PLAINTIFFS' SERVICE OF PROCESS UPON EACH DEFENDANT. ........................ 24

   1. Iran ......................................................................... 25

   2. IRGC ......................................................................... 28

   3. MOIS ......................................................................... 30

   4. Bank Markazi ................................................................. 33

   5. Bank Melli Iran ................................................................ 35

   6. NIOC ......................................................................... 36

E. PLAINTIFFS HAVE SUFFICIENTLY EFFECTED SERVICE UNDER 28 U.S.C §1608 ET SEQ. .......................................................................... 38

F. CONCLUSION .................................................................... 39

# **TABLE OF AUTHORITIES**

Page(s)

## **Cases**

*Argentine Republic v. Ameranda Hess Shipping Corp.*,
488 U.S. 428 (1989) ...................................................................................... 2

*Azadeh v. Gov't of Islamic Republic of Iran*,
318 F. Supp. 3d 90 (D.D.C. 2018) ................................................................. 4

*Bank Markazi v. Peterson*,
136 S. Ct. 1310 (2016) ............................................................................. 11, 12

*Bank Markazi v. Peterson*,
2015 WL 7294865 (Nov. 16, 2015) ............................................................. 12

*Barot v. Embassy of Zambia*,
785 F.3d 26 (D.C. Cir. 2015) ......................................................................... 3

*Blais v. Islamic Republic of Iran*,
459 F. Supp. 2d 40 (D.D.C. 2006) ................................................................. 6

*Bluth v. Islamic Republic of Iran*,
203 F. Supp. 3d 1 (D.D.C. 2016) ................................................................. 25

*Doe I v. State of Israel*,
400 F. Supp. 2d 86 (D.D.C. 2005) ................................................................. 5

*EIE Guam Corp. v. Long Term Credit Bank of Japan, Ltd.*,
322 F.3d 635 (9th Cir. 2003) ....................................................................... 11

*Flatow v. Islamic Republic of Iran*,
999 F. Supp. 1, ¶ 19 (D.D.C.1998) ............................................................... 6

*Gates v. Syrian Arab Republic*,
646 F. Supp. 2d 79 (D.D.C. 2009) ................................................................. 3

*Gates v. Syrian Arab Republic*,
646 F.3d 1 (D.C. Cir. 2011) ...................................................................... 3, 4

*Gates v. Victor Fine Foods*,
54 F.3d 1457 (9th Cir. 1995) ....................................................................... 11

*Haim v. Islamic Republic of Iran*,
902 F. Supp. 2d 71 (D.D.C. 2012) ................................................................. 6

*Holladay v. Islamic Republic of Iran*,
406 F. Supp. 3d 55 (D.D.C. 2019) ........................................................... 7, 10

*Estate of Hirshfeld v. Islamic Republic of Iran*,
2017 WL 361062 (D.D.C. Jan. 25, 2017) ..................................................... 4

*In re Islamic Republic of Iran Terrorism Litig.*,
659 F. Supp. 2d 31 ......................................................................................... 8

*Karcher v. Islamic Republic of Iran*,
249 F. Supp. 3d 557 (D.D.C. 2017) .......................................................... 3, 4

*Kirschenbaum v. 650 Fifth Ave. & Related Properties*,
830 F.3d 107 (2d Cir. 2016) .......................................................................... 9

*Kirschenbaum v. 650 Fifth Ave.*,
   257 F. Supp. 3d 463 (S.D.N.Y. 2017) ............................................................................... 9
*Murphy Bros.*, *Inc. v. Michetti Pipe Stringing, Inc.*,
   526 U.S. 344 (1999) ......................................................................................................... 3
*Peterson v. Islamic Republic of Iran*, et al., No. 10 CIV. 4518 KBF,
   2013 WL 1155576 (S.D.N.Y. Mar. 13, 2013) ................................................................... 11
*Peterson v. Islamic Republic of Iran, et al.*, No. 10 CIV. 4518 KBF,
   2013 WL 5538652 (S.D.N.Y. Oct. 8, 2013) ...................................................................... 12
*Republic of Argentina v. Weltover, Inc.*,
   504 U.S. 607 (1992) ....................................................................................................... 13
*Richardson v. Ag of the British V.I.*,
   2013 U.S. Dist. LEXIS 117763, (D.V.I. August 20, 2013) ................................................ 11
*Rimkus v. Islamic Republic of Iran*,
   575 F. Supp. 2d 181 (D.D.C. 2008) .................................................................................. 6
*Roeder v. Islamic Republic of Iran*,
   333 F. 3d 228 (D.D.C. 2003) .......................................................................................... 8
*S&S Mach. Co. v. Masinexportimport*,
   706 F.2d 411 (2nd Cir. 1983) ........................................................................................ 10
*Salazar v. Islamic Republic of Iran*,
   370 F. Supp. 2d 11 (D.D.C. 2005) ................................................................................... 6
*Smith v. Overseas Korean Cultural Heritage Found.*,
   279 F. Supp. 3d 293 (D.D.C. 2018) ................................................................. 13, 14, 23
*Transaero, Inc. v. La Fuerza Aerea Boliviana*,
   30 F.3d 148 (D.C. Cir. 1994) .......................................................................................... 8
*Valore v. Islamic Republic of Iran*,
   700 F. Supp. 2d 52 (D.D.C. 2010) .................................................................................. 25
*Vivas v. Boeing Co.*,
   2007 U.S. Dist. LEXIS 61625, *16 (N.D. Ill. August 21, 2007) ....................................... 11
*Weininger v. Castro*,
   462 F. Supp. 2d 457 (S.D.N.Y 2006) ............................................................................. 10
*Weinstein v. Islamic Republic of Iran*,
   609 F.3d 43 (2d Cir. 2010) .......................................................................................... 9, 10
*Wultz v. Islamic Republic of Iran*,
   755 F. Supp. 2d 1 (D.D.C. 2010) .................................................................................... 8

## Statutes

28 U.S.C. § 1603 ........................................................................................................ 11, 12
28 U.S.C. § 1603(a)(3) ....................................................................................................... 4
28 U.S.C. § 1603(b) ............................................................................................... 8, 10, 21
28 U.S.C. § 1603(d) .......................................................................................................... 12
28 U.S.C. § 1608 ...................................................................................................... Passim
28 U.S.C. § 1608(a)(1) ....................................................................................................... 3
28 U.S.C. § 1608(a)(2) ....................................................................................................... 3

28 U.S.C. § 1608(a)(3)................................................................................................Passim
28 U.S.C. § 1608(a)(4)................................................................................................Passim
28 U.S.C § 1608(b)(1) ......................................................................................................4
28 U.S.C. § 1608(b)(2) .....................................................................................................5
28 U.S.C. § 1608(b)(3)(a)-(c) ..........................................................................................5
28 U.S.C. § 1608(b)(3)(B) ........................................................................................Passim
28 U.S.C. § 1608(c) ..........................................................................................................5
50 U.S.C.A. § 2405(j) .......................................................................................................6

## Rules and Regulations

FRCP 4(f)(2)(C)(ii) ............................................................................................ 27, 29, 32
31 C.F.R. § 525.433 ........................................................................................................ 12
31 C.F.R. § 560.304 ........................................................................................................ 10

## Other Authorities

*Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters*; 20 UST 361, T.I.A.S. No. 6638 (Feb. 10, 1969)..................................... 5
H.R. Rep. No. 1487........................................................................................................ 11
Executive Order 12957 ..................................................................................................... 9
Executive Order 12959 ..................................................................................................... 9
Executive Order 13224 ............................................................................................. 14, 17
Executive Order 13382 ................................................................................................... 23

Plaintiffs respectfully submit this motion and memorandum, and move this Court for an Order finding service of process has been sufficiently made on Defendants[1] pursuant to the Foreign Sovereign Immunities Act ("FSIA").

As set forth below, Plaintiffs worked closely with the Clerk of Court, the United States Postal Service, and the U.S. Department of State to ensure all Defendants were properly served with process pursuant to the FSIA, specifically according to 28 U.S.C. §§ 1608(a)(4) and 1608(b)(3)(B).

Additionally, Plaintiffs have secured expert analysis of the activities of NIOC, Bank Melli Iran, and Bank Markazi as it relates to their status as "agents and instrumentalities of Iran" as of the date of the filing of their complaint. Plaintiffs submit to the Court this information, as well as legal authority, for its consideration regarding the sufficiency of service of process on all Defendants.

## A. INTRODUCTION AND BACKGROUND

Plaintiffs filed their Complaint on October 23, 2018. (Dkt. 1). Concurrent with their Complaint, Plaintiffs filed a Notice of Related Case informing the Court that this case was related to *Holladay, et. al. v. the Islamic Republic of Iran, et. al.*, 1:17-cv-00915-RDM. ("*Holladay*"). (Dkt. 2).

At a status conference held with the Court in *Holladay* on October 30, 2019, consolidation of this case with *Holladay* was discussed, and the Court indicated the consolidation proposal

---

[1] Defendants include: The Islamic Republic of Iran ("Iran"), The Islamic Revolutionary Guard Corps ("IRGC"), Iranian Ministry of Intelligence and Security ("MOIS"), Bank Markazi Jomhouri Islami Iran (a/k/a/ Central Bank or Iran ("Bank Markazi")), Bank Melli Iran, and the National Iranian Oil Company ("NIOC")

should be submitted to the Court after the complete resolution in *Holladay* of the issue of service

of process as to certain defendants (specifically, Bank Markazi and NIOC). *See* Dkt. 34-1 – Exhibit

A - Transcript of October 30, 2019 Proceedings in *Holladay* at 11-12.

On February 11, 2021, the Court entered an order in *Holladay* finding that plaintiffs had

properly served Bank Markazi and NIOC in that matter pursuant to 28 U.S.C. § 1608(b)(3)(B).

*See Holladay, et al. v. Islamic Republic of Iran, et al.,*1:17-cv-915-RDM, D.D.C., at Doc. 113

(February 11, 2021).

In adherence to the process established by the Court in *Holladay*, Plaintiffs hereby submit

this Motion and Memorandum of Points and Authorities in Support of Order Finding Effective

Service of Process Pursuant to 28 U.S.C. § 1608. This Motion details Plaintiffs' efforts to serve

each Defendant. These efforts are substantially similar to, but far less factually complicated than,

the steps taken by the plaintiffs in *Holladay*.[2]

For the reasons detailed below, the Court should find that Service of Process has been

sufficiently achieved against all Defendants in this matter.

## B.  SERVICE OF PROCESS PURSUANT TO THE FSIA

The FSIA "provides the sole basis for obtaining jurisdiction over a foreign state in the

courts of this country." *Argentine Republic v. Ameranda Hess Shipping Corp.*, 488 U.S. 428, 443

---

[2] In *Holladay*, several of the service packages were returned to the Clerk after having been received
and signed for by the defendants. The Court asked the *Holladay* plaintiffs to provide further factual
information about the receipt and retention of the packages by these defendants prior to their
seemingly-mysterious return to the Clerk. The plaintiffs in *Holladay* provided the Court with this
additional information in a Renewed Motion (*see Holladay* Doc. No. 99), upon which the Court
entered its Feb. 11, 2021 Order. Because of the issues with DHL tracking in *Holladay*, the Plaintiffs
here used the United States Postal Service and the Iranian Postal Service, which together, provided
online package tracking as well as digital signed and returned postal receipts. *See e.g.* Dkt Nos.
17-1, and 18-1 – tracking information for Bank Markazi and NIOC.

(1989). It is well established that "[b]efore a court may exercise personal jurisdiction over a defendant, the procedural requirement of service must be satisfied." *Gates v. Syrian Arab Republic*, 646 F. Supp. 2d 79, 84 (D.D.C. 2009), aff'd, 646 F.3d 1 (D.C. Cir. 2011) (citing *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc*., 526 U.S. 344, 351 (1999)).

### 1.    Serving a Foreign State and its Political Subdivisions under §1608(a).

28 U.S.C. § 1608(a) sets forth the requirements for service on a foreign state, including Defendant The Islamic Republic of Iran ("Iran"), and its political subdivisions. The United States Court of Appeals for the District of Columbia Circuit has held that "[w]hen serving a foreign sovereign, strict adherence to the terms of 1608(a) is required." *Karcher v. Islamic Republic of Iran*, 249 F. Supp. 3d 557, 558 (D.D.C. 2017) (*citing Barot v. Embassy of Zambia*, 785 F.3d 26, 27 (D.C. Cir. 2015)). Under that statute, "there are four methods of effecting service, which are set forth in descending order of preference." *Id.*

First, service may be effected "by delivery of a copy of the summons and complaint in accordance with any special arrangement for service between the plaintiff and the foreign state or political subdivision." 28 U.S.C. § 1608(a)(1).

Second, if no such special arrangements exist, service may be accomplished "by delivery of a copy of the summons and complaint in accordance with an applicable international convention on service of judicial documents." 28 U.S.C. § 1608(a)(2).

Third, if service cannot be made by the first two methods, service may be accomplished by sending a copy of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the head of the ministry of foreign

affairs of the foreign state concerned. 28 U.S.C. § 1608(a)(3). International courier service by USPS with delivery accepted by signature of an agent at the foreign ministry constitutes service under 28 U.S.C. § 1603(a)(3). *See Gates v. Syrian Arab Republic*, 646 F.3d 1, 5 (D.C. Cir. 2011); *Karcher*, 249 F. Supp. 3d at 558 (*citing Foley v. Syrian Arab Republic*, Civil Action No. 11–699, Mem. Op. and Order, at 7, ECF No. 51 (Jan. 21, 2016)).

Fourth, if service cannot be made "within 30 days" pursuant to the third method, service can be effected through the U.S. Department of State, which transmits two copies of the summons, the complaint, and a notice of suit to the foreign state via diplomatic channels. 28 U.S.C. § 1608(a)(4). Courts in this district have ruled that service can be attempted under section 1608(a)(4) ***only after*** plaintiffs attempt and fail to effect service within 30 days under section 1608(a)(3). *See Id*., *Estate of Hirshfeld v. Islamic Republic of Iran*, No. CV 15-1082 (CKK), 2017 WL 361062, at *2 (D.D.C. Jan. 25, 2017)(*emphasis added*); *Azadeh v. Gov't of Islamic Republic of Iran*, 318 F. Supp. 3d 90 (D.D.C. 2018).

### 2.      Serving Agencies and Instrumentalities of a Foreign State under §1608(b).

Service of process upon a foreign sovereign's "agencies or instrumentalities" is governed separately by 28 U.S.C. § 1608(b), which also provides a hierarchy for service.

First, service may be effected "by delivery of a copy of the summons and complaint in accordance with any special arrangement for service between the plaintiff and the agency or instrumentality." 28 U.S.C § 1608(b)(1).

However, if no "special arrangement" exists, the second method is to serve "by delivery of a copy of the summons and complaint either to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process in the United States;

or in accordance with an applicable international convention on service of judicial documents." 28

U.S.C. § 1608(b)(2). In many instances, service under this section is conducted according to the

terms of a specific international treaty, such as the *Hague Convention on the Service Abroad of*

*Judicial and Extrajudicial Documents in Civil or Commercial Matters*. 20 UST 361, T.I.A.S. No.

6638 (Feb. 10, 1969).

Finally, if the first and second methods fail or are unavailable, service can be made "if

reasonably calculated to give actual notice, by delivery of a copy of the summons and complaint,

together with a translation of each into the official language of the foreign state— (A) as directed

by an authority of the foreign state or political subdivision in response to a letter rogatory or request

or (B) by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk

of the court to the agency or instrumentality to be served, or (C) as directed by order of the court

consistent with the law of the place where service is to be made." 28 U.S.C. § 1608(b)(3)(a)-(c).

"The service requirements of § 1608(b) are less stringent than those of § 1608(a), and can

be satisfied by 'technically faulty service' as long as the defendants receive adequate notice of the

suit and are not prejudiced." *Doe I v. State of Israel*, 400 F. Supp. 2d 86, 102 (D.D.C. 2005).

Pursuant to the FSIA, service shall be deemed to have been made "(1) in the case of service

under subsection (a)(4), as of the date of transmittal indicated in the certified copy of the diplomatic

note; and (2) in any other case under this section, as of the date of receipt indicated in the

certification, signed and returned postal receipt, or other proof of service applicable to the method

of service employed." 28 U.S.C. § 1608(c).

Thus, if litigants strictly adhere to the hierarchy of service of process as outlined in 28

U.S.C. § 1608, and submit proof of such compliance as provided for in 28 U.S.C. § 1608(c), the

court shall find service effective. As is demonstrated below, Plaintiffs here have sufficiently effected service on all Defendants and ask the Court to enter an Order affirming service has been achieved.

## C. DEFENDANTS' STATUS AS SOVEREIGN ENTITIES UNDER FSIA

Plaintiffs have named and served six separate Defendants that include the Islamic Republic of Iran ("Iran"), and some of its various political subdivisions, and agents and instrumentalities.

### 1. Iran, Islamic Revolutionary Guard Corps, and Iranian Ministry of Intelligence and Security.

Defendant Iran is a "foreign state." *See, e.g., Rimkus v. Islamic Republic of Iran*, 575 F. Supp. 2d 181, 198–200 (D.D.C. 2008) ("Defendant Iran 'is a foreign state and has been designated a state sponsor of terrorism pursuant to section 69(j) of the Export Administration Act of 1979 (50 U.S.C.A. § 2405(j)) continuously since January 19, 1984.'")(quoting *Flatow v. Islamic Republic of Iran*, 999 F. Supp. 1, 9, ¶ 19 (D.D.C.1998).

Defendants Islamic Revolutionary Guard Corps ("IRGC") and Iranian Ministry of Intelligence and Security ("MOIS") are also considered part of the state of Iran. *See Blais v. Islamic Republic of Iran*, 459 F. Supp. 2d 40, 60– 61 (D.D.C. 2006) (both MOIS and IRGC must be treated as the state of Iran itself for purposes of liability); *Salazar v. Islamic Republic of Iran*, 370 F. Supp. 2d 11, 105, 115–16 (D.D.C. 2005) (same). *But see Haim v. Islamic Republic of Iran*, 902 F. Supp. 2d 71, 74 (D.D.C. 2012) (finding MOIS was served pursuant to 28 U.S.C. § 1608(b)).

The IRGC is a branch of the Iranian Armed Forces. The IRGC is comprised of five branches - Ground Forces, Air Force, Navy, Basij militia, and Qods Force special operations (IRGC-QF), in addition to a counterintelligence directorate and representatives of the Supreme Leader of Iran.

6

MOIS is a non-military government organization that operates inside and outside of Iran. MOIS functions as the Iranian Intelligence Service and, in this capacity, it is the secret police and primary intelligence agency of the Islamic Republic of Iran. It is the part of the Iranian government's security apparatus responsible for intelligence gathering, infiltrating internal opposition groups, monitoring domestic threats and expatriate dissent, arresting alleged spies and dissidents, exposing conspiracies deemed threatening, and maintaining liaison with other foreign intelligence agencies as well as with organizations that protect the Iran's interests around the World.

In *Holladay*, this Court found that all three - Iran, IRGC, and MOIS - are subject to service under § 1608(a) as "the foreign state or political subdivision[s]" thereof. 28 U.S.C. § 1608(a). "Iran is, of course, the foreign state itself, and the 'core functions' of IRGC and MOIS are inherently governmental. As a result, they are both 'so closely bound up with the structure of the state that they must in all cases be considered as the 'foreign state' itself, rather than a separate 'agency or instrumentality' of the state.'" *Holladay v. Islamic Republic of Iran*, 406 F. Supp. 3d 55, 59 (D.D.C. 2019) (internal citations omitted).

The same applies here. Because Iran is the foreign state subject to suit in this matter, and because MOIS and IRGC are political subdivisions of Iran, service of process to these defendants is governed by 28 U.S.C. 1608(a).

**2.      Bank Melli Iran, Bank Markazi, and National Iranian Oil Company.**

Defendants Bank Melli Iran, Bank Markazi Jomhouri Islami Iran (a/k/a/ Central Bank of Iran) ("Bank Markazi"), and the National Iranian Oil Company ("NIOC"), are all agencies and instrumentalities of Iran. Therefore, service of process involving these defendants is governed by

28 U.S.C. 1608(b).

Under the law of this Circuit, there is a two-part method for determining whether entities like Bank Markazi, Bank Melli and NIOC are agencies or instrumentalities, rather than political subdivisions, of a foreign state. *See generally Wultz v. Islamic Republic of Iran*, 755 F. Supp. 2d 1, 29 (D.D.C. 2010). First, the entity must satisfy the criteria set forth in 28 U.S.C. § 1603(b), which defines an "agency or instrumentality of a foreign state" as:

> any entity—
>
> (1) which is a separate legal person, corporate or otherwise, and
> (2) which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof, and
> (3) which is neither a citizen of a State of the United States as defined in section 1332(c) and (e) of this title, nor created under the laws of any third country.

If those criteria are met, then the "core functions test" is applied to determine if the entity's core functions are predominantly governmental or commercial. *See Transaero, Inc. v. La Fuerza Aerea Boliviana*, 30 F.3d 148, 151 (D.C. Cir. 1994) ("We think that the categorical approach adopted in *Segni* and urged, in a somewhat different form, by the United States—whether the core functions of the foreign entity are predominantly governmental or commercial—best captures the statutory meaning."); *In re Islamic Republic of Iran Terrorism Litig.*, 659 F. Supp. 2d 31, 48 n. 10 (D.D.C. 2009) (quoting *Roeder v. Islamic Republic of Iran*, 333 F. 3d 228, 234 (D.D.C. 2003)). If the entity's core functions are predominantly governmental, then the entity is considered part of the foreign state; but if the entity's core functions are predominantly commercial, then the entity is considered an agency or instrumentality of the foreign state. *Wultz*, 755 F. Supp. 2d at 29.

As shown below, Bank Markazi, Bank Melli and NIOC satisfy the statutory definition of an agency or instrumentality and this Circuit's core functions test.

### a.  Bank Melli is an Agent or Instrumentality of Iran.

Defendant Bank Melli Iran is, and was at the time Plaintiffs filed their Complaint, wholly-owned by the government of Iran, formed under the laws of Iran and its principal place of business is in Iran. Bank Melli Iran serves commercial purposes in Iran. It is, therefore, an agency and instrumentality of Iran. *See* Dec. G. Kleiman, § D.

Prior to the filing of the Complaint, the U.S. government routinely concluded that Bank Melli Iran was owned by Iran. In March 1995, President Clinton issued Executive Orders ("EO") declaring the "actions and policies of the Government of Iran" a threat to U.S. national security and imposing financial sanctions on U.S. persons for various transactions and commerce with the Government of Iran. Exec. Order No. 12957, 60 Fed. Reg. 14,615 (Mar. 15, 1995); Exec. Order No. 12959, 60 Fed. Reg. 24,757 (May 6, 1995); *see also Kirschenbaum v. 650 Fifth Ave. & Related Properties*, 830 F.3d 107, 118 (2d Cir. 2016), *cert. denied sub nom. Alavi Found. v. Kirschenbaum*, 137 S. Ct. 1332, 197 L. Ed. 2d 518 (2017), and *abrogated by Rubin v. Islamic Republic of Iran*, 138 S. Ct. 816 (2018).

Pursuant to the authority provided under the EOs, the U.S. Treasury Department's Office of Foreign Asset Control ("OFAC") determined that Bank Melli Iran was owned or controlled by the Government of Iran, and thus "subjected it to, among other things, limitations on the receipt of services from U.S. financial institutions beginning June 6, 1995, except as authorized by an OFAC license." *Kirschenbaum*, 830 F.3d at 119 (citing Implementation of Executive Order No. 12,959 With Respect to Iran, 60 Fed. Reg. 40,881–02 (Aug. 10, 1995)). In other FSIA cases in which Bank Melli Iran has chosen to appear, it has conceded it is an agency and instrumentality. *See Kirschenbaum v. 650 Fifth Ave.*, 257 F. Supp. 3d 463, 519 (S.D.N.Y. 2017); *Weinstein v. Islamic*

*Republic of Iran*, 609 F.3d 43, 48 (2d Cir. 2010) ("Finally, Bank Melli concedes that it is an instrumentality of Iran.").

In *Holladay*, this Court found that Bank Melli had been served appropriately under 28 U.S.C. § 1608(b)(3)(B). *Holladay v. Islamic Republic of Iran*, 406 F. Supp. 3d 55, 63 (D.D.C. 2019).

Here, Plaintiffs served Bank Melli using similar methods as were used in *Holladay* and therefore the Court should find that service of process on Bank Melli satisfies the requirements of § 1608(b)(3)(B), and has been achieved.

### b.  Bank Markazi is an Agency or Instrumentality of Iran.

Defendant Bank Markazi is, and was at the time Plaintiffs filed their Complaint, a corporation formed under the laws of Iran, with its principal place of business in Iran, and wholly owned by the government of Iran. *See* Dec. G. Kleiman, § C. *See also* 31 C.F.R. § 560.304. As such, it is the "agency or instrumentality of a foreign state" under 28 U.S.C. § 1603(b). *See Weininger v. Castro*, 462 F. Supp. 2d 457, 498 (S.D.N.Y 2006) ("state-owned central banks indisputably are included in the 1603(b) definition of 'agency or instrumentality'"); *see also S&S Mach. Co. v. Masinexportimport*, 706 F.2d 411, 414 (2nd Cir. 1983) (ruling that state owned central banks are covered under the statutory definition).

When enacting the FSIA, Congress defined a central bank (such as Bank Markazi) as an agency or instrumentality of a foreign state:

> As a general matter, entities which meet the definition of an "agency or instrumentality of a foreign state" could assume a variety of forms, including a state trading corporation, a mining enterprise, a transport organization such as a shipping line or airline, a steel company, ***a central bank***, an export association, a governmental procurement agency or a department or ministry which acts and is suable in its own name.

H.R. Rep. No. 1487, 94th Cong., 2d Sess. 15, reprinted in 1976 U.S. Code Cong. & Ad. News 6604, 6614 (emphasis added). *See also Richardson v. Ag of the British V.I.*, 2013 U.S. Dist. LEXIS 117763, *25-26 (D.V.I. August 20, 2013) ("[w]hile the statutory definition of 'agency or instrumentality' is fairly helpful, legislative history provides more guidance as to what Congress meant in using that term."); and *Vivas v. Boeing Co.,* 2007 U.S. Dist. LEXIS 61625, *16 (N.D. Ill. August 21, 2007) (holding that the determination as to "agency or instrumentality" status under § 1603 is a "flexible approach [that] is supported by the legislative history of the FSIA."); *EIE Guam Corp. v. Long Term Credit Bank of Japan, Ltd.*, 322 F.3d 635, 640 (9th Cir. 2003) *citing Gates v. Victor Fine Foods*, 54 F.3d 1457, 1460 (9th Cir. 1995) ("We have observed that '[the FSIA]'s legislative history suggests that Congress intended the terms 'organ' and 'agency or instrumentality' to be read broadly.").

Because it operates as the Central Bank of Iran, congressional intent recognizes Bank Markazi as an "agency or instrumentality," and indeed it has been recognized as such in Second Circuit cases. *See Peterson v. Islamic Republic of Iran*, et al., No. 10 CIV. 4518 KBF, 2013 WL 1155576, at *19 (S.D.N.Y. Mar. 13, 2013), aff'd, 758 F.3d 185 (2d Cir. 2014), *aff'd sub nom. Bank Markazi v. Peterson*, 136 S. Ct. 1310, 194 L. Ed. 2d 463 (2016) (order denying Bank Markazi's motion to dismiss for lack of subject matter jurisdiction after its assets were seized and process was served on it as an agency or instrumentality of Iran). *See also Peterson v. Islamic Republic of Iran, et al*., No. 10 CIV. 4518 KBF Doc. No 333 – Affirmation of Service of Process upon Bank Markazi pursuant to 28 U.S.C. § 1608(b)(3)(B), the sufficiency of which was never disputed by Bank Markazi).

In cases where Bank Markazi has chosen to appear, it has consistently acknowledged it is

an agency and instrumentality of Iran. In fact, Bank Markazi has tried to use its separate legal status as a shield from asset collection. *See Peterson*, No. 10 CIV. 4518 KBF, 2013 WL 5538652, at *3 (S.D.N.Y. Oct. 8, 2013) ("Bank Markazi does not dispute that it is an instrumentality of Iran [citing to Bank Markazi's motion]. Indeed, its acknowledgement of that fact forms the premise of its motion that it is entitled to FSIA immunity."). Bank Markazi has argued that its status as a separate juridical entity under federal common law and international law frees it from liability for Iran's terrorism judgment debts. *See Bank Markazi v. Peterson*, 136 S. Ct. 1310, 1333 (2016); *see also Bank Markazi v. Peterson*, 2015 WL 7294865 (Nov. 16, 2015) Petitioner Brief (Bark Markazi stating that it "is the Central Bank of Iran. Founded in 1960, the bank is an independent and distinct legal entity, separate from the Iranian government. Under Iranian law, it is treated as a joint stock company except as otherwise provided by Iran's Monetary and Banking Law.")

Finally, the Code of Federal Regulations governing OFAC regulations expressly states, "The Central Bank of Iran (Bank Markazi) is an agent, instrumentality and controlled entity of the Government of Iran for all purposes under this part." 31 C.F.R. § 525.433 (emphasis added).

### i. Bank Markazi's functions are predominantly commercial.

Bank Markazi satisfies the core functions test because its functions are predominantly commercial, rather than governmental.

Though § 1608 makes no mention of "commercial activity," the nearby statute § 1603 does define commercial activity in a way that is instructive. Specifically, § 1603(d) provides that "'commercial activity' means either a regular course of commercial conduct or a particular commercial transaction or act. The commercial character of an activity shall be determined by reference to the nature of the course of conduct or particular transaction or act, rather than by

reference to its purpose." This last qualification—that the purpose of an entity's activities is irrelevant—is key. After all, the purpose of an entity wholly (or at least mostly) owned by a foreign state will necessarily be governmental and therefore too its activities. Indeed, because a corporation's primary interest is its shareholders, the primary purpose of a government-owned corporation must necessarily be to further the interests of the government. Naturally, therefore, courts look to the "nature" of the entity's acts, rather than their "purpose," in evaluating whether they are commercial. *See Smith v. Overseas Korean Cultural Heritage Found.*, 279 F. Supp. 3d 293, 297 (D.D.C. 2018) ("Although the Defendant's interests and objectives may align with, or be directed by, a foreign state, I must look to the 'nature' of the act, rather than its 'purpose.'") (citing *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 614 (1992)). In *Smith*, the court found the defendant's act of building and operating a museum commercial, and explained:

> At its core, the Defendant's act is to build and operate a museum. This is an act that sovereigns may accomplish, but it is not an act that only a sovereign power can do. Museums can be privately built and operated, even if they may be focused on promoting a particular culture or tradition. Whether the Defendant intends to operate the museum for profit also does not impact the inquiry. As the Supreme Court has stated in the context of defining "commercial" for purposes of FSIA, "the question is not whether the foreign government is acting with a profit motive or instead with the aim of fulfilling uniquely sovereign objectives. Rather, the issue is whether the government's particular actions (whatever the motive behind them) are the type of actions by which a private party engages in commerce." As the Defendant's action—building and operating a museum—is the type of action by which a private party can engage in commerce, the Defendant's act is commercial in nature.

*Id.* (quoting *Weltover*). Based on this analysis, the court found the defendant, the Overseas Korean Cultural Heritage Foundation, to be an agency or instrumentality for purposes of § 1608 and service of process.

Bank Markazi performs standard banking services for its customers, just like private

commercial banks do. These banking activities include providing loans, possessing assets and liabilities, reporting its profits and losses, paying income taxes, and issuing small loans and letters of credit to public and private customers. *See* Dec. G. Kleiman at ¶¶ 8-9; & 13-14. Bank Markazi also owns and operates the Treasury of National Jewels, a museum housing a historical collection of national treasure of gemstones, jewelry, and artwork which is open to the public and generates income for Bank Markazi.[3] *Cf. Smith*, 279 F. Supp. 3d at 297 (finding that operating a museum is a commercial activity).

While it does implement monetary and credit directives through the Money and Credit Council (MCC), the MCC is the agency that sets the policy. *See* Dec. G. Kleiman at ¶ 12. The real benefit Bank Markazi provides to high ranking members of the Government of Iran is in its commercial capacity, where it can be used to secretly channel illicit funds to terrorist organizations abroad and to keep favored companies and financial institutions afloat. *Id*. at ¶¶ 15-17. In fact, Bank Markazi has used its commercial activities to support terrorism, including the terrorist attacks at issue in this case. Because of its terror-related commercial activities, the U.S. Department of the Treasury's Office of Foreign Assets Control (OFAC) has routinely sanctioned Bank Markazi pursuant to Executive Order (E.O.) 13224. Official announcements of these sanctions actions detail how Bank Markazi uses its commercial activities to support terrorism.

For example, a 2007 U.S. Treasury press release regarding the designation of the Iranian-owned Bank Saderat as an SDGT, noted that:

> Bank Saderat, which has approximately 3,200 branch offices, has been used by the Government of Iran to channel funds to terrorist organizations, including Hezbollah and EU-designated terrorist groups Hamas, PFLP-GC, and Palestinian Islamic Jihad. For example, from 2001 to 2006, Saderat

---

[3] *See* https://www.cbi.ir/Page/AboutTreasuryNationalJewels_en.aspx (last visited April 7, 2021).

> *transferred $50 million from the **Central Bank of Iran** through its subsidiary in London to its branch in Beirut for the benefit of Hezbollah fronts in Lebanon that support acts of violence.*"[4]

Likewise, according to the United States' Financial Crimes Enforcement Network ("FinCEN"):

> The Central Bank of Iran, which regulates Iranian banks, has assisted designated Iranian banks by transferring billions of dollars to these banks in 2011. In mid-2011, the CBI transferred several billion dollars to designated banks, including Saderat, Mellat, EDBI and Melli, through a variety of payment schemes. In making these transfers, the CBI attempted to evade sanctions by minimizing the direct involvement of large international banks with both CBI and designated Iranian banks.[5]

More recently, and during the pendency of this case, FinCEN issued an advisory related to Bank Markazi, and its officers/directors, stating:

> The Iranian regime uses deceptive practices, including front companies, fraudulent documents, exchange houses, seemingly legitimate businesses and government officials, to generate illicit revenues and finance their malign activities. Iran's deceptive practices have been orchestrated not only by elements of their government such as the IRGC-Qods Force, ***but also by Central Bank of Iran officials who were at the highest levels. Any country that allows its Central Bank to be involved in deception in support of terrorism requires the highest levels of scrutiny***, particularly when the country itself is the world's largest state sponsor of terrorism.[6]

---

[4] *See* **Exhibit A** - Fact Sheet, U.S. Dep't of the Treasury, Designation of Iranian Entities and Individuals for Proliferation Activities and Support for Terrorism (Oct. 25, 2007), also available at*:* https://www.treasury.gov/press-center/press-releases/pages/hp644.aspx (last visited April 7, 2021).

[5] *See* **Exhibit B** – Finding That the Islamic Republic of Iran Is a Jurisdiction of Primary Money Laundering Concern, 76 Fed. Reg. 72756 (Nov. 25, 2011), also available at: https://www.govinfo.gov/content/pkg/FR-2011-11-25/pdf/2011-30332.pdf (last visited April 7, 2021).

[6] *See* **Exhibit C** - FinCEN Advisory on the Iranian Regime's Illicit and Malign Activities and Attempts to Exploit the Financial System (Oct. 11, 2018), also available at: https://www.fincen.gov/news/news-releases/fincen-issues-advisory-iranian-regimes-illicit-and-malign-activities-and (last visited April 7, 2021).

Also during the pendency of this case, Bank Markazi and its officers have been sanctioned for masking its commercial activities to fund terrorism in Iraq and provide support to terrorist groups. For example, on May 15, 2018, OFAC sanctioned Bank Markazi's governor, Mr. Valiollah Seif, and Ali Tarzali, the assistant director of the International Department at Bank Markazi, stating:

> Seif has conspired with the IRGC-QF to move millions of dollars through the international financial system in a variety of foreign currencies to allow the IRGC-QF to fund its activities abroad. Seif has also supported the transfer of IRGC-QF-associated funds to al-Bilad Islamic Bank, an Iraq-based bank… [Ali] Tarzali has worked with Hizballah and proposed that the terrorist group send funds through Iraq-based al-Bilad Islamic Bank…. [which] enabled the IRGC-QF's exploitation of Iraq's banking sector to move funds from Tehran to Hizballah, jeopardizing the integrity of the Iraqi financial system…. serving as a conduit for financial disbursements from the IRGC-QF to Iranian-backed Iraqi groups, [and] has also helped provide IRGC-QF financial support to Lebanese Hizballah.[7]

Bank Markazi and more of its senior officials were sanctioned again on November 20, 2018, for playing a critical role in Iran's illicit oil network designed to generate funds for Iranian terror proxies, by facilitating payments for Iran's sale of oil through front companies and entities, and syphoning funds for the IRGC-QF, Hezbollah, and other foreign terrorist organizations. Specifically, OFAC found that:

> To conceal its involvement in these transactions, the CBI makes these payments to Mir Business Bank using Iran-based Tadbir Kish Medical and Pharmaceutical Company (Tadbir Kish). Despite the reference to humanitarian goods in Tadbir Kish's name, the company has repeatedly been used to facilitate illicit transfers in support of this oil scheme. Following the CBI's transfer of funds from Tadbir Kish to Global Vision Group in Russia, Global Vision Group transfers payment to Russia state-

---

[7] *See* **Exhibit D** - Press Release, U.S. Dep't of the Treasury, Treasury Targets Iran's Central Bank Governor and an Iraqi Bank Moving Millions of Dollars for IRGC-Qods Force (May 15, 2018), also available at: https://home.treasury.gov/news/press-releases/sm0385 (last visited April 7, 2021).

owned Promsyrioimport to pay for the oil. Mir Business Bank was designated on November 5, 2018, pursuant to Executive Order (E.O.) 13224, and is a wholly-owned subsidiary of Iran's Bank Melli, which was designated for acting as conduit for payments to IRGC-QF.

\*\*\*

CBI senior officials play a critical role in this arrangement. Rasul Sajjad, CBI's International Department Director, and Hossein Yaghoobi, CBI's Vice Governor for International Affairs, have both assisted in facilitating Alchwiki's transfers.

\*\*\*

This scheme has also funneled millions of dollars between the CBI and Alchwiki's Mir Business Bank account in Russia.

\*\*\*

Senior CBI officials played a key role in this scheme, working with their counterparts in Syria and Alchwiki to facilitate transfer of foreign currency to Hizballah, and together have coordinated the transfer of millions of dollars through this network. Specifically, CBI Official, Hossein Yaghoobi, who also has a history of working with Hizballah in Lebanon, has coordinated financial transfers intended for Hizballah with the IRGC-QF and Hizballah personnel.[8]

To illustrate Bank Markazi's role in the illicit commercial transactions outlined above, OFAC has provided the following diagram[9]:

---

[8] *See* **Exhibit E** - Press Release, U.S. Dep't of the Treasury, Treasury Designates Illicit Russia-Iran Oil Network Supporting the Assad Regime, Hizballah, and HAMAS (Nov. 20, 2018), also available at: https://home.treasury.gov/news/press-releases/sm553 (last visited April 7, 2021).
[9] *Id.*



On September 20, 2019, Bank Markazi's involvement in illicit commercial transactions resulted in yet another round of sanctions—this time involving Iran's National Development Fund and the movement of Iran's foreign currency reserves to its terrorist proxies.[10] Specifically, OFAC stated:

> Since at least 2016, the IRGC-QF has received the vast majority of its foreign currency from the CBI and senior CBI officials have worked directly with the IRGC-QF to facilitate CBI's financial support to the IRGC-QF. In 2017, the IRGC-QF oversaw the transfer of tens of millions of euros to Iraq from the CBI. Then-Governor of the CBI Valiollah Seif directed the transfer.
>
> During 2018 and early 2019, the CBI facilitated the transfer of several billion of U.S. dollars and euros to the IRGC-QF and hundreds of millions to MODAFL from the NDF. Additionally, millions were to be transferred to the Houthis. CBI has also coordinated with the IRGC-QF to transfer funds to Hizballah.

---

[10] *See* **Exhibit F** - Press Release, U.S. Dep't of the Treasury, Treasury Sanctions Iran's Central Bank and National Development Fund (Sept. 20, 2019), also available at: https://home.treasury.gov/news/press-releases/sm780 (last visited April 7, 2021).

> OFAC is designating the CBI today for ***having materially assisted, sponsored, or provided financial, material, or technological support for, or goods or services to, the IRGC-QF and Hizballah***.

(Emphasis added).

Prior to this sanction, OFAC had previously detailed Bank Markazi's involvement in currency exchange schemes used to fund terrorism when announcing terrorist designations against multiple Iranian individuals and entities on May 10, 2018, stating:

> [A]n extensive currency exchange network in Iran and the UAE… has procured and transferred millions in U.S. dollar-denominated bulk cash to Iran's Islamic Revolutionary Guard Corps-Qods Force (IRGC-QF) to fund its malign activities and regional proxy groups… ***Iran's Central Bank was complicit in the IRGC-QF's scheme and actively supported this network's currency conversion and enabled its access to funds that it held in its foreign bank accounts***. This network of exchangers and couriers has converted hundreds of millions of dollars.
> ***
> The Iranian regime and its ***Central Bank have abused access to entities in the UAE to acquire U.S. dollars to fund the IRGC-QF's malign activities, including to fund and arm its regional proxy groups***, by concealing the purpose for which the U.S. dollars were acquired.[11]

(Emphasis added).

OFAC also provided the following diagram demonstrating Bank Markazi's role in this particular currency exchange scheme:[12]

---

[11] *See* **Exhibit G** - Press Release, U.S. Dep't of the Treasury, United States and United Arab Emirates Disrupt Large Scale Currency Exchange Network Transferring Millions of Dollars to the IRGC-QF (May 10, 2018), also available at: https://home.treasury.gov/news/press-releases/sm0383 (last visited on April 7, 2021).

[12] *Id*. at 4, high-resolution version of diagram available at https://www.treasury.gov/resource-center/sanctions/Programs/Documents/irgc_currency_exchange_en.pdf (last visited on April 7, 2021).



As detailed in the U.S. sanctions against Bank Markazi and others, its core functions as a bank performing commercial activities for its customers permit it to play a critical role in Iran's support for terrorism. If not for the predominance of Bank Markazi's commercial functions, such economic sanctions against Bank Markazi would not be as effective as they have been proven to be.[13]

---

[13] *See* **Exhibit H** – U.S. Dep't of State, Press Briefing (April 2, 2019). Mr. Robert Palladino, Deputy Spokesperson for the U.S. Department of State, and Mr. Brian Hook, Special Representative for Iran and Senior Advisor to the Secretary of State, conducted a Department Press Briefing. The purpose of the press briefing was to inform the public about the efforts that the government had undertaken to re-institute economic sanctions against Iran that (as was true at all times relevant in this action) are primarily intended to cripple its ability to use its terrorist network to commit or support acts of international terrorism. At the Press Briefing, Brian Hook stated that the US sanctions, particularly against Iran's oil and financial network, was "constraining [Iran's] ability to operate freely in the region… are draining Iran's support to its proxies, and for the first time in a very long time, they have less access to revenue to spread terror and militancy." Video of this statement is available at: https://www.state.gov/briefings/department-press-briefing-april-

Based on the foregoing, as well as the attached expert declaration and exhibits, "Bank Markazi's commercial activities predominate and have evolved in intensity over its history," including commercial activities purposefully designed to materially support Iran's terror proxies, including the groups who committed the specific attacks at issue in this a case. *See* Dec. G. Kleiman at ¶ 18.

In *Holladay, et al. v. Islamic Republic of Iran, et al*., this Court concluded that Bank Markazi "is an agency or instrumentality of Iran and may be served according to the requirements of § 1608(b)."[14]

Accordingly, because Bank Markazi is an "agency or instrumentality of a foreign state" under 28 U.S.C. § 1603(b), and Plaintiffs used substantially the same process to serve it as was used in *Holladay*, the Court should find that service of process upon Bank Markazi has been accomplished.

### c.   National Iranian Oil Company is an Agent or Instrumentality of Iran.

NIOC is a government-owned commercial entity, overseen by the Iranian Ministry of Petroleum, and primarily "involved in the production and sale of oil and oil products." *See* Dec. P. Clawson at ¶ 3. NIOC is a separate legal entity formed under the laws of Iran and wholly owned by Iran. *Id*. at ¶¶ 21-22. The primary benefit it provides the state is in its commercial capacity as the leader in the production and sale of oil and oil products. *Id*. at ¶¶ 23-25. It is responsible for

---

2-2019/ (last accessed April 7, 2021).

[14] The Court in *Holladay* did state that it still had unanswered questions, but that the Plaintiffs' inability to answer its questions was from no fault of their own, and that in defaulting, Bank Markazi deprived the Plaintiffs of being able to further discover information to assist the court in its assessment (*see Holladay*, Doc. 113 (February 11, 2021) at 17-18). The same applies in this case.

the exploration, drilling, production, research, and development of oil, gas, and petroleum products in Iran. *Id.* at ¶ 18. In 2008, the U.S. Treasury identified NIOC (and other Iranian agencies) as centrally involved in the sale of Iranian oil, as entities that are owned or controlled by the Government of Iran.[15] Under the Iran Threat Reduction and Syria Human Rights Act of 2012 ("ITRSHRA"), the U.S. government determined that NIOC is an agent or affiliate of the IRGC under section 104(c)(2)(E)(i) of the Comprehensive Iran Sanctions, Accountability, and Divestment Act of 2010 and section 302 of ITRSHRA. As part of that 2012 certification, NIOC was formally determined to be wholly owned and controlled by Iran and to provide significant support to the IRGC:

> It is the sense of Congress that the National Iranian Oil Company and the National Iranian Tanker Company are not only owned and controlled by the Government of Iran but that those companies provide significant support to Iran's Revolutionary Guard Corps and its affiliates.[16]

---

[15] *See* **Exhibit I** – Fact Sheet, U.S. Dep't of the Treasury, Treasury Strengthens Preventive Measures Against Iran (Nov. 6, 2008), also available at: https://www.treasury.gov/press-center/press-releases/Pages/hp1258.aspx (last visited April 7, 2021); and **Exhibit J** – Press Release, U.S. Dep't of the Treasury, OFAC Identifies Entities Owned or Controlled by the Government of Iran (Nov. 26, 2008), also available at: https://www.treasury.gov/press-center/press-releases/Pages/hp1299.aspx (last visited April 7, 2021).

[16] *See* https://www.treasury.gov/resource-center/sanctions/Documents/hr_1905_pl_112_158.pdf. In designating certain financial institutions and businessmen in September 2013, the U.S. Treasury Department identified entities "willing to engage in deceptive transactions to conceal the direct involvement of the Iranian Government and its instrumentalities such as the National Iranian Oil Company (NIOC)…" Press Release, U.S. Dep't of the Treasury, Treasury Exposes Iranian Attempts to Evade Oil Sanctions, available at: https://www.treasury.gov/press-center/press-releases/Pages/jl2158.aspx (last visited April 7, 2021). After the events giving rise to the claims herein, the U.S. government withdrew this determination as of 2016. On January 16, 2016 as part of "Implementation Day" for the U.S. government's understanding with Iran relating to its nuclear weapons program, the U.S. Treasury Department "determined that NIOC is no longer an agent or affiliate of the IRGC," however, on November 4, 2018, the U.S. Treasury's prior sanctions were re-imposed following the United States withdrawal from the Joint Comprehensive Plan of Action (JCPOA). On September 4, 2019, Treasury designated an Iranian petroleum shipping network for supports the IRGC-QF and other designated terrorist, stating that that, "[t]he crude oil and condensate sold by this IRGC-QF network originates with the National Iranian Oil Company

The revenue generated through NIOC's commercial activities is used to finance terrorist groups, including the terrorist groups in this case, supported by the IRGC and MOIS. *Id*. at ¶¶ 22-23. Pursuant to E.O. 13382, the U.S. government designated NIOC a Specially Designated National (SDN).

### i. NIOC is a separate legal entity that performs predominantly commercial activities.

NIOC readily meets the "core functions test," as its activities are predominantly commercial in nature. Indeed, as one of the world's leading oil companies, NIOC's main function is the exploration, drilling, production, research and development, refining, distribution, and export of oil, gas and petroleum products. *Id*. at ¶¶ 18-20. Those are undoubtedly "the type[s] of action by which a private party can engage in commerce." *Smith*, 279 F. Supp. 3d at 297.

NIOC has, in turn, used its commercial activities to support the IRGC's terror operations in multiple ways. For instance, NIOC used its oil and natural gas revenues to launder money for the IRGC, often using Defendant Bank Markazi for this purpose. NIOC also obtained letters of credit from western banks to provide financing and credit to the IRGC.[17]

In September 2012, the U.S. Treasury Department reported to Congress that:

> Recently, the IRGC has been coordinating a campaign to sell Iranian oil in an effort to evade international sanctions, specifically those imposed by the European Union that prohibit the import, shipping, and purchase of Iranian oil, which went into full effect on July 1, 2012.

---

(NIOC)." *See also* **Exhibit K** - Press Release, U.S. Dep't of the Treasury, Treasury Designates Vast Iranian Petroleum Shipping Network That Supports IRGC-QF and Terror Proxies (Sept. 4, 2019), also available at: https://home.treasury.gov/news/press-releases/sm767 (last visited April 7, 2021). NIOC remains wholly-owned and controlled by Iran.

[17] *See e.g.* **Exhibit L** -The Superseding Indictment filed in *U.S. v. Zarrab* (filed in the S.D.N.Y (1:15-cr-00867)) demonstrating that, as late as 2013, NIOC continued to illegally launder U.S. dollars through U.S. financial institutions.

> Under the current Iranian regime, the IRGC's influence has grown within NIOC. For example, on August 3, 2011, Iran's parliament approved the appointment of Rostam Qasemi, a Brigadier General in the IRGC, as Minister of Petroleum. Prior to his appointment, Qasemi was the commander of Khatam Al-Anbia, a construction and development wing of the IRGC that generates income and funds operations for the IRGC. Even in his new role as Minister of Petroleum, Qasemi has publicly stated his allegiance to the IRGC.[18]

"NIOC does fulfill some governmental and quasi-governmental functions ancillary to the production and sale of oil, but those are not its principal activities" and, this function is clearly ancillary to its commercial activities, the profits from which fuel the Iran's larger regional and geopolitical aspirations. Dec. P. Clawson at ¶ 28. Indeed, as Dr. Clawson has concluded based on his education, research, and experience, as well as his review and analysis of substantial documents and information about NIOC, "NIOC's activities are predominantly commercial in nature, and were predominantly commercial in nature in October 2018." Id. at ¶ 2, 27. Because NIOC is an agency or instrumentality of Iran, service of process pursuant to 28 U.S.C. § 1608(b) is appropriate.

### D. PLAINTIFFS' SERVICE OF PROCESS UPON EACH DEFENDANT.

Plaintiffs filed their Complaint on October 23, 2018, and shortly thereafter retained a certified translation service to translate the Complaint into Farsi, the native and official language of Iran and all Defendants. Plaintiffs also retained Aaron Lukken, Esq., of Viking Advocates, LLC, an expert on extraterritorial service of process with experience serving Iranian defendants located outside of the United States pursuant to FSIA. On January 8, 2019, after receiving the translated version of the Complaint, and under the guidance of Mr. Lukken, Plaintiffs began their efforts to

---

[18] *See* **Exhibit M** - Press Release, U.S. Dep't of the Treasury, Treasury Submits Report to Congress on NIOC and NITC (Sept. 24, 2012), also *available at* https://www.treasury.gov/press-center/press-releases/Pages/tg1718.aspx (last visited April 7, 2021).

serve the Defendants.[3]

Because "[no] special arrangements for service exist between Iran and the plaintiffs, nor is Iran a party to any applicable international convention on service of judicial documents," Plaintiffs' attempts to serve Defendants began along the service hierarchy immediately following the requisite step permitted when special arrangements do exist. *See Valore v. Islamic Republic of Iran*, 700 F. Supp. 2d 52, 70 (D.D.C. 2010); *Bluth v. Islamic Republic of Iran*, 203 F. Supp. 3d 1, 18 (D.D.C. 2016). If and when the Plaintiffs' efforts failed, the next sequential method was attempted until service was made. These efforts are detailed below:

      **1.**      **Iran**

On January 8, 2019, Plaintiffs, by letter to the Clerk of Court (*see* Dkt. No. 10-1) sent via Federal Express overnight delivery (Waybill 7741 3953 2220), requested that the Clerk ship a service package to Defendant Iran pursuant to 28 U.S.C. § 1608(a)(3). Included with the letter was a ready-to-ship package for service addressed to the Ministry of Foreign Affairs in Iran, containing two copies in English with Farsi translations of each of the following documents: the Complaint; Notice of Suit; Summons; the Notice of Related Case (*see* Dkt. No. 2); and a full and complete copy of the Foreign Sovereign Immunities Act.

This service box was provided to the Clerk unsealed and included a corresponding DHL Waybill. The DHL Waybill for Iran was addressed specifically to the Islamic Republic of Iran, Ministry of Foreign Affairs located at Imam Khomeini Street, Imam Khomeini Square, Tehran 1136914811. The DHL Waybill was numbered 61 8432 6842. *See* Dec. S. Jarrett at ¶ 5.

On January 18, 2019, Plaintiffs were contacted by the Clerk's office and were advised that DHL was no longer attempting service in Iran and Plaintiffs needed to determine how to

move forward with Service of Process.[19] *Id* at 8.

Because DHL now required an OFAC shipping license in order to ship packages to Iran, on March 6, 2019, Plaintiffs requested the Clerk of Court to effect service of process on the Islamic Republic and other defendants by United States Postal Service, registered mail, return receipt requested pursuant to 28 U.S.C. 1608(a)(3). *See* Dkt. 13. On March 6, 2019, the Clerk of Court filed a Certificate of Mailing by USPS registered mail, return receipt requested. *See* Dkt. 14 & 14-1.

The USPS First Class package addressed to the Islamic Republic of Iran, Registered Mail No. 001522799 US, left Washington, DC on March 8, 2019 and arrived in New York on March 11, 2019. Dkt. 15-1 at 2. The package arrived at the Imam Khomeini Airport in Tehran, Iran on March 21, 2019. *Id*. Because USPS does not provide further tracking for international tracking services, there was no additional tracking of the package available through USPS. However, according to data collected and provided by the National Post Office of the Islamic Republic of Iran a/k/a "IRI Post Company," the service package arrived at the Customs office in Tehran, Iran on March 25, 2019. Dkt. 15-1 at 9. Multiple attempts to deliver the service package to the Iranian Minister of Foreign Affairs were made, but the package was refused by the recipient at the final destination. *Id* at 9 – 10. On April 26, 2019, Plaintiffs filed Notice of Failed Service under 28 U.S.C. § 1608(a)(3) and supporting documentation regarding failure of service on

---

[19] Subsequently, by email correspondence from DHL dated January 23, 2019, Plaintiffs were advised that shipments by DHL to Iran would not be allowed unless an OFAC license was obtained. On January 25, 2019, Plaintiffs applied for an OFAC license from the Office of Foreign Assets Control in order to ship legal documents to Iran. As of the date of this Motion – more than two years since Plaintiffs' OFAC application – Plaintiffs' application for an OFAC license to ship documents to Iran remains pending. *See* Dec. S. Jarrett at ¶¶ 10 -11.

Defendant Iran. *See Dkt*. No. 15 & 15-1.

On April 29, 2019, Plaintiffs, via letter addressed to the Clerk of Court, requested foreign service of process through the U.S. Department of State upon Defendant Iran pursuant to 28 U.S.C. § 1608 (a)(4) and FRCP 4(f)(2)(C)(ii), and provided the Clerk's office with prepared service box containing two copies of English and Farsi translations of each of the following documents; the Complaint; Notice of Suit; Summons; Notice of Related Case; and a full and complete copy of the Foreign Sovereign Immunities Act. Included with this box was a check for $2,275.00—the fee charged by the U.S. Department of State to serve documents under 28 U.S.C. § 1608(a)(4). *See* Dkt. No. 19 & 19-1.

On April 30, 2019, the Clerk of Court filed a Certificate of Mailing indicating that the Clerk had shipped the service box to: U.S. Department of State, CA/OCS/L, SA-17, 10th Floor, 2201 C Street NW, Washington, D.C. 20522-1710. *See* Dkt. No. 20 & 21.

On May 1, 2019, the Clerk's Federal Express packages addressed to the U.S. Department of State, Consular Affairs and requesting service under 28 U.S.C. § 1608(a)(4) arrived at their destination in Washington, D.C. *See* Dec. S. Jarrett ¶ 19.

On July 30, 2019, the Clerk of Court filed an Affidavit of Service dated July 25, 2019, and executed by Jared N. Hess, Attorney Advisor of the U.S. Department of State Overseas Citizens Services, Office of Legal Affairs, confirming that "the documents were delivered to the Iranian Ministry of Foreign Affairs under cover of diplomatic notes No. 1048-IE; 1049-IE, and 1050-IE, each dated July 1, 2019 and delivered on July 3, 2019." The Affidavit included Certified Copies of the diplomatic notes that were authenticated and sealed by representatives of the U.S. Department of State on July 3, 2019. *See* Dkt. No. 25.

27

Plaintiffs filed their Affidavit in Support of Default against Iran with the Court on September 4, 2019 (Dkt. No. 32) and a Default was entered against Iran by the Clerk of Court on September 5, 2019. *See* Dkt. 33.

To date, Defendant Iran has not filed any answer or pleading of any kind.

### 2.     IRGC

On January 8, 2019, Plaintiffs, by letter to the Clerk of Court (*see* Dkt. No. 10-1) sent via Federal Express overnight delivery (Waybill 7741 3955 1167), requested that the Clerk ship a service package to Defendant IRGC pursuant to 28 U.S.C. § 1608(a)(3). Included with the letter was a ready-to-ship package for service addressed to the IRGC, including two copies of English with Farsi translations of each of the following documents: the Complaint; Notice of Suit; Summons; the Notice of Related Case (*see* Dkt. No. 2); and a full and complete copy of the Foreign Sovereign Immunities Act.

This service box was provided to the Clerk unsealed and included a corresponding DHL Waybill. The DHL Waybill for the IRGC was addressed specifically to the Islamic Revolutionary Guard Corps, c/o Ministry of Foreign Affairs located at Imam Khomeini Street, Imam Khomeini Square, Tehran 1136914811. The DHL Waybill was numbered 79 2376 3643. *See* Dec. S. Jarrett at ¶ 5.

On January 18, 2019, Plaintiffs were contacted by the Clerk's office and were advised that DHL was no longer attempting service in Iran and Plaintiffs needed to determine how to move forward with service of process. *Id* at ¶ 8.

Because of DHL's requirement for an OFAC shipping license in order to ship packages to Iran, on March 6, 2019, Plaintiffs requested the Clerk of Court to effect service of process on

the Islamic Revolutionary Guard Corps and other defendants by United States Postal Service, registered mail, return receipt requested pursuant to 28 U.S.C. 1608(a)(3). *See* Dkt. 13. On March 6, 2019, the Clerk of Court filed a Certificate of Mailing by USPS registered mail, return receipt requested. *See* Dkt. 14 & 14-1.

The USPS First Class package addressed to the Islamic Revolutionary Guard Corps, Registered Mail No. 001 522 723 US, left Washington, DC on March 8, 2019 and arrived in New York on March 11, 2019. Dkt. 15-2 at 2. The package arrived at the Imam Khomeini Airport in Tehran, Iran on March 21, 2019. *Id.* Because USPS does not provide further tracking for international tracking services, there was no additional tracking of the package available through USPS. According to data collected and provided by the National Post Office of the Islamic Republic of Iran a/k/a "IRI Post Company," the service package, arrived at the Customs office in Tehran, Iran on March 25, 2019. *Id* at 9. Multiple attempts to deliver the service package to the Iranian Minister of Foreign Affairs were made, but the package was refused by the recipient at the final destination. *Id* at 9-10. On April 26, 2019, Plaintiffs filed Notice of Failed Service under 28 U.S.C. § 1608(a)(3) and supporting documentation regarding failure of service on Defendant Islamic Revolutionary Guard Corps. *See* Dkt. No. 15 & 15-2.

On April 29, 2019, Plaintiffs, via letter addressed to the Clerk of Court, requested foreign service of process through the U.S. Department of State upon Defendant Islamic Revolutionary Guard Corps pursuant to 28 U.S.C. § 1608 (a)(4) and FRCP 4(f)(2)(C)(ii), and provided the Clerk's office with prepared service box containing two copies of English and Farsi translations of each of the following documents: the Complaint; Notice of Suit; Summons; Notice of Related Case; and a full and complete copy of the Foreign Sovereign Immunities Act. Included with this

box was a check for $2,275.00—the fee charged by the U.S. Department of State to serve documents under 28 U.S.C. § 1608(a)(4). *See* Dkt. No. 19 & 19-1.

On April 30, 2019, the Clerk of Court filed a Certificate of Mailing indicating that the Clerk had shipped the service box to: U.S. Department of State, CA/OCS/L, SA-17, 10th Floor, 2201 C Street NW, Washington, D.C. 20522-1710. *See* Dkt. No. 20 & 21.

On May 1, 2019, the Clerk's Federal Express packages addressed to the U.S. Department of State, Consular Affairs and requesting service under 28 U.S.C. § 1608(a)(4) arrived at their destination in Washington, D.C. *See* Dec. S. Jarrett at ¶ 19.

On July 30, 2019, the Clerk of Court filed an Affidavit of Service dated July 25, 2019, and executed by Jared N. Hess, Attorney Advisor of the U.S. Department of State Overseas Citizens Services, Office of Legal Affairs, confirming that "the documents were delivered to the Iranian Ministry of Foreign Affairs under cover of diplomatic notes No. 1048-IE; 1049-IE, and 1050-IE, each dated July 1, 2019 and delivered on July 3, 2019." The Affidavit included Certified Copies of the diplomatic notes that were authenticated and sealed by representatives of the U.S. Department of State on July 3, 2019. *See* Dkt No. 25.

Plaintiffs filed their Affidavit in Support of Default against Islamic Revolutionary Guard Corps with the Court on September 4, 2019 (Dkt. No. 32) and a Default was entered against Islamic Revolutionary Guard Corps by the Clerk of Court on September 5, 2019. *See* Dkt. 33.

To date, Defendant Islamic Revolutionary Guard Corps has not filed any answer or pleading of any kind.

### 3.     MOIS

On January 8, 2019, Plaintiffs, by letter to the Clerk of Court (*see* Dkt. No. 10-1) sent via

Federal Express overnight delivery (Waybill 7741 3956 9700), requested that the Clerk ship a service package to Defendant Iranian Ministry of Intelligence & Security ("MOIS") pursuant to 28 U.S.C. § 1608(a)(3). Included with the letter was a ready-to-ship package for service addressed to MOIS, including two copies of English with Farsi translations of each of the following documents: the Complaint; Notice of Suit; Summons; the Notice of Related Case (*See* Dkt. No. 2); and a full and complete copy of the Foreign Sovereign Immunities Act.

This service box was provided to the Clerk unsealed and included a corresponding DHL Waybill. The DHL Waybill for MOIS was addressed specifically to the Iranian Ministry of Intelligence & Security, Ministry of Foreign Affairs, Imam Khomeini Street, Imam Khomeini Square, in Tehran, Iran, 1136914811. The DHL Waybill was numbered 79 2378 3733. *See* Dec. S. Jarrett at ¶ 5.

On January 18, 2019, Plaintiffs were contacted by Clerk's office and were advised that DHL was no longer attempting service in Iran and Plaintiffs needed to determine how to move forward with service of process. *Id* at ¶ 8.

Because of DHL's requirement for an OFAC shipping license in order to ship packages to Iran, on March 6, 2019, Plaintiffs requested the Clerk of Court to effect service on MOIS and other defendants by United States Postal Service, registered mail, return receipt requested pursuant to 28 U.S.C. 1608(a)(3). *See* Dkt. 13. On March 6, 2019, the Clerk of Court filed a Certificate of Mailing by USPS registered mail, return receipt requested. *See* Dkt. 14 & 14-1.

The USPS First Class package addressed to the Iranian Ministry of Intelligence & Security, Registered Mail No. 001522856 US, left Washington, DC on March 8, 2019 and arrived in New York on March 11, 2019. Dkt. 15-3 at 2. The package arrived at the Imam

Khomeini Airport in Tehran, Iran on March 21, 2019. *Id*. Because USPS does not provide further tracking for international tracking services, there was no additional tracking of the package available through USPS. According to data collected and provided by the National Post Office of the Islamic Republic of Iran a/k/a "IRI Post Company," the service package arrived at the Customs office in Tehran, Iran on March 25, 2019. *Id* at 9. Multiple attempts to deliver the service package to the Iranian Minister of Foreign Affairs were made, but the package was refused by the recipient at the final destination. *Id* at 9 – 10. On April 26, 2019, Plaintiffs filed Notice of Failed Service under 28 U.S.C. § 1608(a)(3) and supporting documentation regarding failure of service on Defendant MOIS. *See Dkt*. No. 15 & 15-3.

On April 29, 2019, Plaintiffs, via letter addressed to the Clerk of court, requested foreign service of process through the U.S. Department of State upon Defendant MOIS pursuant to 28 U.S.C. § 1608 (a)(4) and FRCP 4(f)(2)(C)(ii), and provided the Clerk's office with prepared service box containing two copies of English and Farsi translations of the each of the following documents: the Complaint; Notice of Suit; Summons; Notice of Related Case; and a full and complete copy of the Foreign Sovereign Immunities Act. Included with this box was a check for $2,275.00—the fee charged by the U.S. Department of State to serve documents under 28 U.S.C. § 1608(a)(4). *See* Dkt. Nos. 19 & 19-1.

On April 30, 2019, the Clerk of Court filed a Certificate of Mailing indicating that the Clerk had shipped the service box to: U.S. Department of State, CA/OCS/L, SA-17, 10th Floor, 2201 C Street NW, Washington, D.C. 20522-1710. *See* Dkt. Nos. 20 & 21.

On May 1, 2019, the Clerk's Federal Express packages addressed to the U.S. Department of State, Consular Affairs and requesting service under 28 U.S.C. § 1608(a)(4) arrived at their

destination in Washington, D.C. *See* Dec. S. Jarrett ¶ 19.

On July 30, 2019, the Clerk of Court filed an Affidavit of Service dated July 25, 2019, and executed by Jared N. Hess, Attorney Advisor of the U.S. Department of State Overseas Citizens Services, Office of Legal Affairs, confirming that "the documents were delivered to the Iranian Ministry of Foreign Affairs under cover of diplomatic notes No. 1048-IE; 1049-IE, and 1050-IE, each dated July 1, 2019 and delivered on July 3, 2019." The Affidavit included Certified Copies of the diplomatic notes that were authenticated and sealed by representatives of the U.S. Department of State on July 3, 2019. *See* Dkt. No. 25.

Plaintiffs filed their Affidavit in Support of Default against MOIS with the Court on September 4, 2019 (Dkt. No. 32) and a Default was entered against MOIS by the Clerk of Court on September 5, 2019. *See* Dkt. 33.To date, Defendant MOIS has not filed any answer or pleading of any kind.

### 4.    Bank Markazi

Bank Markazi Jomhouri Islami Iran ("Bank Markazi") is headquartered in Tehran, Iran, at Mirdamad Boulevard, No. 198. *See* Dec. G. Kleiman, ¶ 11.

On January 8, 2019, Plaintiffs, by letter to the Clerk of Court (*see* Dkt. No. 9-1) sent via Federal Express overnight delivery (Waybill 7741 3957 9608), requested that the Clerk ship a service package to Defendant Bank Markazi pursuant to 28 U.S.C. § 1608(b)(3)(B). Included with the letter was a ready-to-ship package for service addressed to Bank Markazi Jomhouri Islami Iran, including two copies of English with Farsi translations of each of the following documents: the Complaint; Notice of Suit; Summons; the Notice of Related Case (Dkt. No. 2); and a full and complete copy of the Foreign Sovereign Immunities Act.

This service box was provided to the Clerk unsealed and included a corresponding DHL Waybill. The DHL Waybill for Bank Markazi was addressed specifically to that defendant at the Mirdamad Boulevard address and was numbered 79 2395 6736. *See* Dec. S. Jarrett at ¶ 5.

On January 18, 2019, Plaintiffs were contacted by the Clerk's office and were advised that DHL was no longer attempting service in Iran and Plaintiffs needed to determine how to move forward with service of process. *Id* at 8.

Because of DHL's requirement for an OFAC shipping license in order to ship packages to Iran, on March 6, 2019, Plaintiffs requested the Clerk of Court to effect service on Bank Markazi and other defendants by United States Postal Service, registered mail, return receipt requested pursuant to 28 U.S.C. § 1608(b)(3)(B). *See* Dkt. 13. On March 6, 2019, the Clerk of Court filed a Certificate of Mailing by USPS registered mail, return receipt requested. *See* Dkt. 14 & 14-1.

The USPS First Class package addressed to Bank Markazi, Registered Mail No. 001522975 US, left Washington, DC on March 8, 2019 and arrived in New York on March 11, 2019. Dkt. 17-1 at 2. The package arrived at the Imam Khomeini Airport in Tehran, Iran on March 21, 2019. *Id.* Because USPS does not provide further tracking for international tracking services, there was no additional tracking of the package available through USPS. According to data collected and provided by the National Post Office of the Islamic Republic of Iran a/k/a "IRI Post Company," the package was delivered on April 20, 2019. *See* Dkt. No. 17-1 at 10.

On April 29, 2019, Plaintiffs filed Notice of Service on Bank Markazi under 28 U.S.C. § 1608(b)(3)(B) and provided Proof of Service on April 20, 2019. *See Dkt*. No. 17 & 17-1.

Plaintiffs filed their Affidavit in Support of Default against Bank Markazi with the Court

on August 7, 2019 (Dkt. No. 26) and a Default was entered against Bank Markazi Jomhouri Islami Iran by the Clerk of Court on August 12, 2019. *See* Dkt. 29.

To date, Defendant Bank Markazi has not filed any answer or pleading of any kind.

### 5. Bank Melli Iran

Bank Melli Iran is headquartered in Tehran, Iran, at Ferdowsi Avenue. *See* Dec. G. Kleiman, ¶ 23.

On January 8, 2019, Plaintiffs, by letter to the Clerk of Court (*See* Dkt. No. 9-1) sent via Federal Express overnight delivery (Waybill 7741 3958 8017), requested that the Clerk ship a service package to Defendant Bank Melli Iran pursuant to 28 U.S.C. § 1608(b)(3)(B). Included with the letter was a ready-to-ship package for service addressed to Bank Melli Iran, including two copies of English with Farsi translations of each of the following documents: the Complaint; Notice of Suit; Summons; the Notice of Related Case (Dkt. 2); and a full and complete copy of the Foreign Sovereign Immunities Act.

This service box was provided to the Clerk unsealed and included a corresponding DHL Waybill. The DHL Waybill for Bank Melli Iran was addressed specifically to that defendant at the Ferdowsi Avenue address and was numbered 79 2380 0695. *See* Dec. S. Jarrett ¶ 5.

On January 18, 2019, Plaintiffs were contacted by the Clerk's office and were advised that DHL was no longer attempting service in Iran and Plaintiffs needed to determine how to move forward with service of process. *Id* at 8.

Because of DHL's requirement for an OFAC shipping license in order to ship packages to Iran, on March 6, 2019, Plaintiffs requested the Clerk of Court to effect service on Bank Melli and other defendants by United States Postal Service, registered mail, return receipt requested

pursuant to 28 U.S.C. § 1608(b)(3)(B). *See* Dkt. 13. On March 6, 2019, the Clerk of Court filed a Certificate of Mailing by USPS registered mail, return receipt requested. *See* Dkt. 14 & 14-1.

The USPS First Class package addressed to Bank Melli, Registered Mail No. 001522944 US, left Washington, DC on March 8, 2019 and arrived in New York on March 11, 2019. Dkt. 16-1 at 2. The package arrived at the Imam Khomeini Airport in Tehran, Iran on March 21, 2019. *Id.* Because USPS does not provide further tracking for international tracking services, there was no additional tracking of the package available through USPS. According to data collected and provided by the National Post Office of the Islamic Republic of Iran a/k/a "IRI Post Company," the package was delivered on April 6, 2019. *See* Dkt. No. 16-1.

On April 29, 2019, Plaintiffs filed Notice of Service on Bank Melli Iran under 28 U.S.C. § 1608(b)(3)(B) and supporting documentation reflecting service of process on Bank Melli on April 6, 2019. *See* Dkt. Nos. 16 & 16-1.

Plaintiffs filed their Affidavit in Support of Default against Bank Melli with the Court on August 7, 2019 (Dkt. No. 28) and a Default was entered against Bank Melli by the Clerk of Court on August 12, 2019. *See* Dkt. 31.

To date, Defendant Bank Melli Iran has not filed any answer or pleading of any kind.

### 6.    NIOC

NIOC is headquartered in Tehran, Iran, at Hafez Crossing on Taleghani Avenue. *See* Dec. G. Kleiman, ¶ 24.

On January 8, 2019, Plaintiffs, by letter to the Clerk of Court (*see* Dkt. No. 9-1) sent via Federal Express overnight delivery (Waybill 7741 3960 1327), requested that the Clerk ship a service package to Defendant NIOC pursuant to 28 U.S.C. § 1608(b)(3)(B). Included with the

letter was a ready-to-ship package for service addressed to NIOC,  including two copies of English with Farsi translations of each of the following documents: the Complaint; Notice of Suit; Summons; the Notice of Related Case (Dkt. 2); and a full and complete copy of the Foreign Sovereign Immunities Act.

This service box was provided to the Clerk unsealed and included a corresponding DHL Waybill. The DHL Waybill for NIOC was addressed specifically to that defendant at the address on Taleghani Avenue and was numbered 79 2389 6256. *See* Dec. S. Jarrett ¶ 5.

On January 18, 2019, Plaintiffs were contacted by the Clerk's office and were advised that DHL was no longer attempting service in Iran and Plaintiffs needed to determine how to move forward with service of process. *Id* at ¶ 8.

Because of DHL's requirement for an OFAC shipping license in order to ship packages to Iran, on March 6, 2019, Plaintiffs requested the Clerk of Court to effect service of process on NIOC and other defendants by United States Postal Service, registered mail, return receipt requested pursuant to 28 U.S.C. § 1608(b)(3)(B). *See* Dkt. 13. On March 6, 2019, the Clerk of Court filed a Certificate of Mailing by USPS registered mail, return receipt requested*. See* Dkt. 14 & 14-1.

The USPS First Class package addressed to NIOC, Registered Mail No. RH001522895US, left Washington, DC on March 8, 2019 and arrived in New York on March 11, 2019. Dkt. 18-1 at 2. The package arrived at the Imam Khomeini Airport in Tehran, Iran on March 21, 2019. *Id.* Because USPS does not provide further tracking for international tracking services, there was no additional tracking of the package available through USPS. According to data collected and provided by the National Post Office of the Islamic Republic of Iran a/k/a

"IRI Post Company," the package was delivered on April 20, 2019. *See* Dkt. No. 18-1.

On April 29, 2019, Plaintiffs filed Notice of Service on the National Iranian Oil Company (NIOC) under 28 U.S.C. § 1608(b)(3)(B) and supporting documentation reflecting service of process on NIOC on April 20, 2019. *See* Dkt. Nos. 18 & 18-1.

Plaintiffs filed their Affidavit in Support of Default against NIOC with the Court on August 7, 2019 (Dkt. No. 27) and a Default was entered against NIOC by the Clerk of Court on August 12, 2019. *See* Dkt. 30.

To date, NIOC has not filed any answer or pleading of any kind.

**E.    PLAINTIFFS HAVE SUFFICIENTLY EFFECTED SERVICE UNDER 28 U.S.C §1608 ET SEQ.**

As detailed above, Plaintiffs first attempted to serve Iran, MOIS, and IRGC pursuant to 28 U.S.C. § 1608(a)(3), and those efforts failed within 30 days of initiation. Therefore, Plaintiffs sought to serve these Defendants pursuant to 28 U.S.C. § 1608(a)(4), and these efforts succeeded in the transmittal of the service packages via diplomatic channels.

Also as detailed above, Plaintiffs' efforts to serve the agent and instrumentality Defendants Bank Melli Iran, Bank Markazi, and NIOC all conformed to hierarchy and the requirements of 28 U.S.C 1608(b).

Therefore, the Court should find that, based upon the preceding facts and law, Plaintiffs effectively served the following Defendants:

1. Iran - served on July 3, 2019, pursuant to 28 U.S.C. § 1608(a)(4);

2. IRGC - served on July 3, 2019, pursuant to 28 U.S.C. § 1608(a)(4);

3. MOIS - served on July 3, 2019, pursuant to 28 U.S.C. § 1608(a)(4);

4. Bank Markazi - served on April 20, 2019, pursuant to § 1608(b)(3)(B);

5. NIOC - served on April 20, 2019, pursuant to § 1608(b)(3)(B); and

6. Bank Melli Iran - served on April 6, 2019 § 1608(b)(3)(B).

## F.      CONCLUSION

For the foregoing reasons, Plaintiffs respectfully move the Court for an Order that service has been effected on all Defendants under 28 U.S.C. §§ 1608(a)(4) and 1608(b)(3)(B), and that the FSIA's service requirements have been satisfied such that the Court may exercise personal jurisdiction over these Defendants.

Dated: April 9, 2021.                              Respectfully submitted,

*/s/ Christopher G. Paulos*
Christopher G. Paulos, *Pro Hac Vice*
Florida Bar No. 0091579
**LEVIN, PAPANTONIO, RAFFERTY, PROCTOR, BUCHANAN, O'BRIEN, BARR, AND MOUGEY, P.A.**
316 South Baylen Street, Suite 600
Pensacola, Florida 32502
Telephone: (850) 435-7067
Facsimile: (850) 436-6067
E-Mail: cpaulos@levinlaw.com

*/s/ Howard L. Nations*
Howard L. Nations
DC Bar No. TX143
**THE NATIONS LAW FIRM**
9703 Richmond Avenue, Suite 200
Houston, TX 77042
Telephone: (713) 807-8400
Facsimile: (713) 807-8423
E-Mail: howard@howardnations.com

***Attorneys for Plaintiffs***