UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GEORGE LON WILLIAMS *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> ISLAMIC REPUBLIC OF IRAN *et al.*, <br><br> *Defendants*. | Civil Action No. 18-2425 (RDM) |

### MEMORANDUM OPINION AND ORDER

More than fifty Plaintiffs, including American soldiers injured or killed in terrorist attacks in Iraq between 2003 and 2011, as well as their family members, bring this action pursuant to the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1602–1611 ("FSIA"), against the Islamic Republic of Iran ("Iran"), its Islamic Revolutionary Guard Corps ("IRGC"), the Iranian Ministry of Intelligence and Security ("MOIS"), Bank Markazi Jomhouri Islami Iran ("Bank Markazi"), Bank Melli Iran ("Bank Melli"), and the National Iranian Oil Company ("NIOC"). Dkt. 1. Pending before the Court is Plaintiffs' motion for an order finding effective service of process under the FSIA. Dkt. 40. In a closely related case, the Court issued two opinions finding effective service of process on the same six defendants. *Holladay v. Islamic Republic of Iran*, 406 F. Supp. 3d 55 (D.D.C. 2019) ("*Holladay I*"); *Holladay v. Islamic Republic of Iran*, No. 17-cv-915, 2021 WL 1746394 (D.D.C. Feb. 11, 2021) ("*Holladay II*").

For many of the same reasons articulated in the Court's decisions in *Holladay*, the Court concludes that Plaintiffs here have properly served all Defendants and will therefore **GRANT** the motion.

## I. BACKGROUND

### A. Statutory Background

The FSIA grants immunity to foreign states in federal and state courts, 28 U.S.C. § 1604, unless one of the statute's enumerated exceptions applies, *see id.* §§ 1605–1607. "The FSIA provides the 'sole basis' for obtaining jurisdiction over a foreign sovereign in the United States." *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 611 (1992) (citation omitted). The statute delineates the scope of immunity not only for foreign countries and their subdivisions, but also for their agencies or instrumentalities. 28 U.S.C. §§ 1603, 1604. The FSIA defines "agency or instrumentality of a foreign state" to mean any entity that (1) "is a separate legal person, corporate or otherwise," (2) "is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof," and (3) "is neither a citizen of a State of the United States . . . nor created under the laws of any third country." *Id.* § 1603(b).

Much of the statutory scheme treats foreign states and their agencies or instrumentalities as one and the same, but certain provisions draw distinctions between them. One of those distinctions, as relevant here, appears in § 1608, which governs service of process. Plaintiffs seeking to serve "a foreign state or political subdivision of a foreign state" must comply with the dictates of § 1608(a), while plaintiffs attempting to serve "an agency or instrumentality of a foreign state" must comply with § 1608(b). *See Holladay I*, 406 F. Supp. 3d at 59; *Howe v. Embassy of Italy*, 68 F. Supp. 3d 26, 31 (D.D.C. 2014).

Those provisions set out similar but not identical options for effecting service, listed in order of precedence. *Worley v. Islamic Republic of Iran*, 75 F. Supp. 3d 311, 327 (D.D.C. 2014). That is, if the first-listed method is unsuccessful or unavailable, then a plaintiff must move to the

second, and so on.  *Id*.  Under § 1608(a), "a foreign state or political subdivision of a foreign state" must be served:

> (1) by delivery of a copy of the summons and complaint in accordance with any special arrangement for service between the plaintiff and the foreign state or political subdivision; or
>
> (2) if no special arrangement exists, by delivery of a copy of the summons and complaint in accordance with an applicable international convention on service of judicial documents; or
>
> (3) if service cannot be made under paragraphs (1) or (2), by sending a copy of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the head of the ministry of foreign affairs of the foreign state concerned, or
>
> (4) if service cannot be made within 30 days under paragraph (3), by sending two copies of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the Secretary of State in Washington, District of Columbia, to the attention of the Director of Special Consular Services—and the Secretary shall transmit one copy of the papers through diplomatic channels to the foreign state and shall send to the clerk of the court a certified copy of the diplomatic note indicating when the papers were transmitted.

28 U.S.C. § 1608(a).  Under § 1608(b), "an agency or instrumentality of a foreign state," by contrast, must be served:

> (1) by delivery of a copy of the summons and complaint in accordance with any special arrangement for service between the plaintiff and the agency or instrumentality; or
>
> (2) if no special arrangement exists, by delivery of a copy of the summons and complaint either to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process in the United States; or in accordance with an applicable international convention on service of judicial documents; or
>
> (3) if service cannot be made under paragraphs (1) or (2), and if reasonably calculated to give actual notice, by delivery of a copy of the summons and complaint, together with a translation of each into the official language of the foreign state—

3

>> (A) as directed by an authority of the foreign state or political subdivision in response to a letter rogatory or request or
>
> (B) by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the agency or instrumentality to be served, or
>
> (C) as directed by order of the court consistent with the law of the place where service is to be made.

*Id.* § 1608(b).

The statute thus requires courts evaluating service under the FSIA first to categorize the defendants to determine whether they are amenable to service under § 1608(a) or § 1608(b). Then, after deciding which provision governs as to each defendant, courts must determine whether the plaintiffs' attempts to effectuate service satisfied the applicable requirements.

**B.    Procedural Background**

Plaintiffs filed this lawsuit on October 23, 2018.  Dkt. 1.  In their complaint, they noted that this case is related to *Holladay*; this "case contains claims brought by co-victims of the same attacks in *Holladay*."  *Id.* at 10.  On April 9, 2021, Plaintiffs filed their motion seeking an order finding effective service of process.  Dkt. 40.  Three days later, Plaintiffs filed a motion to consolidate this case with *Holladay*, on the grounds that the two cases "share *identical* questions of law and fact" and "arise from precisely the same events and transactions."  Dkt. 41 at 3.  In a status report filed the same day, Plaintiffs explained that the only difference between the two cases is "the nature and extent of damages."  Dkt. 42 at 1.  Given the overlap between this case and *Holladay*, the Court's decisions in *Holladay* regarding the adequacy of service are relevant to its consideration of the present motion.

In *Holladay I*, the Court held that the plaintiffs had properly served Iran, IRGC, and MOIS under § 1608(a).  As the Court explained, "Iran is, of course, the foreign state itself,"

4

while IRGC and MOIS "must be treated as the foreign state" based on their inherently governmental functions. *Holladay I*, 406 F. Supp. 3d at 59 (citations omitted). The plaintiffs were thus correct to attempt service of Iran, IRGC, and MOIS under § 1608(a). *Id.* The first two mechanisms for service under § 1608(a) were unavailable because the plaintiffs had no "special arrangement for service" with Iran, 28 U.S.C. § 1608(a)(1), and because Iran is not a party to any "international convention on service of judicial documents," *id.* § 1608(a)(2). *Holladay I*, 406 F. Supp. 3d at 61–62 (citing *Hamen v. Islamic Republic of Iran*, 401 F.Supp.3d 85, 107 (D.D.C. 2019)). The plaintiffs therefore first attempted service under the third paragraph of § 1608(a), but the mailing from the Clerk of Court was returned as undeliverable. *Id.* at 62. Because their attempt to serve process under the third paragraph failed, the plaintiffs proceeded to attempt service of Iran, IRGC, and MOIS through diplomatic channels pursuant to § 1608(a)(4). *Id.* The Department of State, with assistance from the Embassy of Switzerland in Tehran, was able to deliver the required materials to the Iranian Ministry of Foreign Affairs, thereby effecting service on Iran, IRGC, and MOIS in compliance with § 1608(a). *Id.*

The Court also held that the plaintiffs had properly served Bank Melli under § 1608(b). The Court determined that, in light of Bank Melli's commercial banking activities, it was properly categorized as an "an agency or instrumentality of a foreign state." *Id.* at 59–60. The plaintiffs were, accordingly, correct to attempt service under § 1608(b). Once again, neither of the first two methods—a "special arrangement" between the parties or an "applicable international convention"—were available. *Id.* at 63. That left the plaintiffs with the three alternative options listed in § 1608(b)(3). The plaintiffs attempted service under § 1608(b)(3)(B), which requires a plaintiff to deliver a summons and a copy of the complaint, together with a translation of each, to the Clerk of the Court, who must then send the materials to

5

the defendant "by any form of mail requiring a signed receipt." 28 U.S.C. § 1608(b)(3)(B).  As the Court explained, the plaintiffs "delivered to the Clerk of the Court the required materials;" "the Clerk filed a Certificate of Mailing, along with a copy of the DHL mailing receipt;" and the plaintiffs "received notice that the package was successfully delivered to and signed for by an agent of Bank Melli."  *Holladay I*, 406 F. Supp. 3d at 63.  The Court thus concluded that the plaintiffs had properly served Bank Melli under § 1608(b).  *Id.*

The Court declined, however, to decide on the record before it whether the plaintiffs' attempts to serve Bank Markazi and NIOC under § 1608(b)(3)(B) had been effective.  *Id.*  The Court lacked sufficient information to render a decision as to either step in the inquiry.  First, the record included too little detail about the status of Bank Markazi and NIOC for the Court to determine whether each should be treated as the "foreign state" itself or should instead be categorized as "an agency or instrumentality of a foreign state."  *Id.* at 60–61.  Only in the latter case, of course, would service under § 1608(b) have been proper.  Second, even assuming that Bank Markazi and NIOC are agencies or instrumentalities of Iran amenable to service under § 1608(b), the record was unclear as to whether the plaintiffs' attempts at service had been successful.  *Id.* at 63–64.  Although the required materials were delivered to Bank Markazi and NIOC and although someone at each of those entities signed for the delivery, the packages "were mailed back to the clerk's office."  *Id.* at 63.  Because the circumstances surrounding the return of the materials were unclear from the then-existing record, the Court could not determine whether service was "reasonably calculated to give actual notice," as required by § 1608(b)(3).  *Id.* at 63–64.  The Court, accordingly, denied without prejudice the plaintiffs' motion for an order finding effective service of process as to Bank Markazi and NIOC.  *Id.* at 64.

6

The *Holladay* plaintiffs subsequently renewed their motion and offered additional evidence to supplement the record. In *Holladay II*, the Court resolved the remaining issues in the plaintiffs' favor. First, the Court concluded that Bank Markazi and NIOC are agencies or instrumentalities of Iran within the meaning of the FSIA. The Court was "persuaded that NIOC's commercial functions predominate over its governmental functions and that the company is not 'so closely bound up with the structure of the state' that it should be considered the state itself." *Holladay II*, 2021 WL 1746394, at *6 (quoting *Transaero, Inc. v. La Fuerza Aerea Boliviana*, 30 F.3d 148, 153 (D.C. Cir. 1994)). The status of Bank Markazi presented a closer question. Even after two rounds of briefing, "the exact proportion of the bank's activities that are properly considered commercial, as compared to those that are best viewed as governmental, remain[ed] opaque." *Id.* at *8. Despite "some unanswered questions," however, the Court concluded that the plaintiffs had "done enough to make a prima facie showing, which requires less than a preponderance of the evidence, that the bank's activities are predominantly commercial in character." *Id.* at *9. The Court placed weight, in particular, on the facts that the bank had "well over a trillion Rials in loans outstanding;" that the bank had described itself in other litigation as principally a commercial enterprise; and that both the legislative history of the FSIA and caselaw in the Second Circuit had classified state-owned central banks as agencies or instrumentalities of foreign states. *Id.* at *8–9. Bank Markazi and NIOC were thus agencies or instrumentalities of Iran and were subject to service under § 1608(b).

Turning to the second step of the analysis, the Court concluded that the plaintiffs had properly served Bank Markazi and NIOC according to the requirements of § 1608(b). *Id.* at *10. The plaintiffs had "attempted to serve NIOC and Bank Markazi under § 1608(b)(3)(B), which permits service 'by delivery of a copy of the summons and complaint, together with a translation

7

of each into the official language of the foreign state' through 'any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the agency or instrumentality to be served,' so long as service is 'reasonably calculated to give actual notice.'" *Id.* (quoting 28 U.S.C. § 1608(b)(3)(B)). Although the service packages had been "returned to the clerk's office in uncertain circumstances," the plaintiffs' deposition of a DHL representative revealed that "NIOC and Bank Markazi were each in possession of the service materials for more than two weeks" before sending them back, such that the mailings had been reasonably calculated to give actual notice. *Id.*

In sum, the Court concluded in its two *Holladay* opinions that Iran, IRGC, and MOIS are properly categorized as the foreign state itself and are thus amenable to service under § 1608(a); that Bank Melli, Bank Markazi, and NIOC are agencies or instrumentalities of Iran and are thus amenable to service under § 1608(b); and that the *Holladay* plaintiffs had properly served all six of those defendants according to the applicable provisions.

## II.  LEGAL STANDARD

A court adjudicating an FSIA case against an absent defendant must "satisfy itself that it has personal jurisdiction." *Mwani v. bin Laden*, 417 F.3d 1, 6 (D.C. Cir. 2005). Under the FSIA, moreover, service of process is a key component of personal jurisdiction. *See Foremost-McKesson v. Islamic Republic of Iran*, 905 F.2d 438, 442 (D.C. Cir. 1990) (citing 28 U.S.C. § 1330(b)). "In the absence of an evidentiary hearing," plaintiffs may satisfy their burden of demonstrating personal jurisdiction by making "only a prima facie showing of jurisdiction" based on "their pleadings" and "bolstered by such affidavits and other written materials as they can otherwise obtain." *Mwani*, 417 F.3d at 7 (internal citation and quotation marks omitted). The required showing at this stage is lower than a "preponderance of the evidence standard," *id.*

but "conclusionary statement[s]" are insufficient, *Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 787 (D.C. Cir. 1983). Rather, to make a prima facie showing that they properly served the defendants, plaintiffs must present some "concrete evidence." *First Chi. Int'l v. United Exch. Co.*, 836 F.2d 1375, 1378 (D.C. Cir. 1988).

### III. ANALYSIS

As explained above, evaluating service of process under the FSIA requires a two-step inquiry: The Court must first categorize the defendants to determine whether they are subject to service under § 1608(a) or § 1608(b) and must then consider whether the plaintiffs' attempts to effectuate service satisfied the applicable requirements. As required by the first step, the Court categorized the same Defendants based on essentially the same evidence in its *Holladay* opinions, and the Court sees no reason to revisit those questions here. In support of their motion in this case, Plaintiffs advance arguments that are nearly identical to those that the plaintiffs made in *Holladay*, supported by declarations from the same experts. *See* Dkt. 40 at 11–29; Dkt. 40-1 (Kleiman Decl.); Dkt. 40-2 (Clawson Decl.). Nothing in the record, moreover, suggests that the structure of the Iranian government or the Defendant entities has changed in any material respect since the Court's decisions in *Holladay I* and *II*, the latter of which the Court issued just a few months ago. Defendants have not appeared in this case, much less given the Court any reason to question the reasoning it applied in *Holladay* or the applicability of that reasoning in this case. The Court therefore concludes, for the same reasons given in *Holladay*, that Iran, IRGC, and MOIS should be considered the foreign state itself and must be served pursuant to § 1608(a), while Bank Melli, Bank Markazi, and NIOC are agencies or instrumentalities of Iran and must be served pursuant to § 1608(b).

The only remaining question is whether Plaintiffs have served each Defendant in accordance with the applicable provisions. The Court begins its analysis with the three Defendants subject to service under § 1608(a). Plaintiffs have no "special arrangement for service" with Iran, IRGC, or MOIS, 28 U.S.C. § 1608(a)(1), nor is Iran a party to any "applicable international convention on service of judicial documents," *id.* § 1608(a)(2). Plaintiffs thus began by attempting service under § 1608(a)(3), which requires sending the service materials, along with translations, "by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the head of the ministry of foreign affairs of the foreign state concerned." *Id.* § 1608(a)(3). Those efforts failed because, in each instance, the Ministry of Foreign Affairs refused to accept the package. *See* Dkt. 40 at 31–32, 34, 36–37. Plaintiffs, accordingly, proceeded to attempt service on Iran, IRGC, and MOIS under § 1608(a)(4). As the Court explained in *Holladay I*, that provision "requires a plaintiff to send two copies of the summons, complaint, and notice of suit—along with a translation of each document—to the Clerk of Court, who must then provide those materials to the Secretary of State (attn: Director of Special Consular Services), and the Secretary must then transmit one copy of the required materials through diplomatic channels to the foreign state." 406 F. Supp. 3d at 62 (citing 28 U.S.C. § 1608(a)(4)).

On April 29, 2019, Plaintiffs provided the required materials to the Clerk of the Court for service through the Department of State under § 1608(a)(4). Dkt. 19; Dkt. 19-1. On April 30, 2019, the Clerk of the Court mailed these materials to the State Department. Dkt. 21. And, on July 25, 2019, the Department of State sent the Clerk certified copies of diplomatic notes indicating that the required materials commencing suit against Iran, IRGC, and MOIS were transmitted to the Iranian Ministry of Foreign Affairs. Dkt. 25. As in *Holladay*, the Swiss

government assisted in the transmission of the materials, because the United States does not maintain diplomatic relations with Iran. *Id.* The Court thus finds that Plaintiffs have served Iran, IRGC, and MOIS in accordance with the requirements of § 1608(a)(4).

Next, the Court turns to the three Defendants subject to service under § 1608(b). Once again, the first two methods of service—a special arrangement between the parties or an applicable international convention—were unavailable, so Plaintiffs proceeded to § 1608(b)(3). Unlike the other portions of § 1608, the third paragraph of § 1608(b) lists three alternative options for service without requiring plaintiffs to attempt them in any particular order, so long as whichever method they choose is "reasonably calculated to give actual notice." 28 U.S.C. § 1608(b)(3). Here, Plaintiffs attempted service on Bank Melli, Bank Markazi, and NIOC under § 1608(b)(3)(B), which requires sending the service materials "by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the agency or instrumentality to be served."

On January 8, 2019, Plaintiff sent the service packages for Bank Melli, Bank Markazi, and NIOC to the Clerk of Court, along with a request for international mailing. Dkt. 9-1 at 2–3. Although Plaintiffs initially intended to send these materials via DHL, as the *Holladay* plaintiffs had, the Clerk of the Court informed Plaintiffs that "DHL was no longer attempting service in Iran." Dkt. 40 at 39. In light of this development, Plaintiffs asked the Clerk instead to send the service packages "by United States Postal Service, registered mail, return receipt requested." *Id.* The packages arrived at the airport in Tehran on March 21, 2019. *See* Dkt. 16-1; Dkt. 17-1; Dkt. 18-1. The U.S. Postal Service does not provide delivery tracking services beyond that point. Dkt. 40 at 39. But the National Post Office of the Islamic Republic of Iran supplied additional tracking information indicating that the packages were delivered on April 6, 2019 to Bank Melli,

*see* Dkt. 16-1, and on April 20, 2019 to Bank Markazi, *see* Dkt. 17-1, and to NIOC, *see* Dkt. 18-1. Unlike in *Holladay*, there is no indication here that those packages were returned. That fact distinguishes this case from *Haim v. Islamic Republic of Iran*, 902 F. Supp. 2d 71, 72–73 (D.D.C. 2012), where the Court concluded that service under the FSIA was ineffective despite a signature on the receipt because the packages were "immediately rejected." Plaintiffs here obtained a "signed receipt," and service was "reasonably calculated to give actual notice." 28 U.S.C. § 1608(b)(3)(B). Plaintiffs have therefore properly effected service on Bank Melli, Bank Markazi, and NIOC under § 1608(b)(3)(B).

## CONCLUSION

For the reasons explained above, it is hereby **ORDERED** that Plaintiffs' motion for an order finding effective service of process, Dkt. 40, is **GRANTED**.

**SO ORDERED.**

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date: May 6, 2021